UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

 -against-

TYRUS MAZYCK,

     Defendant.

**ORDER**

15 Cr. 233 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

    On January 21, 2016, Defendant Tyrus Mazyck pleaded guilty to conspiracy to distribute and possess with intent to distribute 280 grams of cocaine base and one kilogram of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  This Court accepted Mazyck's plea on January 28, 2016 (Dkt. No. 96), and Mazyck was remanded on February 9, 2016.  (See Dkt. No. 101)

    Mazyck's guilty plea arose from his longtime involvement in a drug-trafficking organization that operated in the Bronx, in the vicinity of Decatur Avenue between East 193rd Street and East Fordham Road.  The organization sold a brand of heroin called "Hardcore."  Mazyck sold drugs for the organization from 2006 until his arrest in 2015.  Between February 2013 and his arrest in April 2015, Mazyck served as a manager of the organization, distributing narcotics to street sellers and then collecting the proceeds.  (July 18, 2018 Sentencing Tr. (Dkt. No. 197) at 5; PSR (Dkt. No. 124) ¶ 10)  At the time of his arrest, agents recovered from Mazyck's apartment 2000 glassines of heroin and 160 bags of crack cocaine, along with narcotics paraphernalia, including baggies, glassines, a digital scale, ink pads, and stamps.  (July 18, 2018 Sentencing Tr. (Dkt. No. 197) at 6; PSR (Dkt. No. 123) ¶ 23)

At sentencing, Mazyck faced a Sentencing Guidelines range of 121 to 151 months' imprisonment, and a statutory mandatory minimum sentence of 120 months' imprisonment. (July 18, 2016 Sentencing Tr. (Dkt. No. 197) at 3) This Court sentenced Mazyck to the statutory mandatory minimum of ten years' imprisonment. (Id. at 7; Judgment (Dkt. No. 186) at 2)

Mazyck is serving his sentence at the Federal Correctional Institution at Loretto ("FCI Loretto"). (Def. Mot. (Dkt. No. 284) at 2) He has served approximately 55 months of his sentence, see PSR (Dkt. No. 124) at 2, and has a release date of September 19, 2024. (Def. Mot. (Dkt. No. 284) at 3)

On May 22, 2020, Mazyck filed an application for compassionate release with the Warden of FCI Loretto. (Def. Mot., Ex. C (Dkt. No. 284-3); see also Def. Mot. (Dkt. No. 284) at 12; Govt. Br. (Dkt. No. 286) at 2 n.1) His application was denied on May 29, 2020. (Def. Mot., Ex. C (Dkt. No. 284-3); Govt. Br. (Dkt. No. 286) at 2 n.1) On August 23, 2020, Mazyck filed a motion with this Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Def. Mot. (Dkt. No. 284) at 2)

Mazyck contends that he is entitled to compassionate release because FCI Loretto "appears to be in the midst of an active [COVID] crisis," and he is "particularly susceptible to suffering severely from COVID-19" because of his obesity. Mazyck also asserts that he suffers from non-allergic asthma, and that "people suffering from non-allergic asthma are clinically proven to be at a higher risk of developing severe illness from COVID-19 compared with adults who do not have asthma." (Def. Mot. (Dkt. No. 284) at 9-10) Mazyck further contends that his "immediate release will . . . not endanger the community," noting that he complied with the

conditions of his pre-trial release in this case, and "incurred only a couple of minor, non-violent disciplinary infractions during his several years in prison." (Id. at 20)

The Government agrees that Mazyck has exhausted his administrative remedies, see Govt. Br. (Dkt. No. 286) at 2 n.1, but opposes Mazyck's application for compassionate release, arguing that "the factors under 18 U.S.C. § 3553(a) weigh strongly against early release." (Id. at 1)

For the reasons stated below, Mazyck's application will be denied.

## DISCUSSION

### I.   LEGAL STANDARD

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A)(i) – provides that a court may

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . , reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Pursuant to the statute, a defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

A court considering an application for compassionate release must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a); determine whether there are "extraordinary and compelling reasons [that] warrant such a reduction"; and consider whether a sentencing

3

"reduction is consistent with applicable policy statements issued by the Sentencing Commission." (Id.)

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

It is undisputed here that Mazyck has exhausted his administrative remedies. (See Def. Mot., Ex. C (Dkt. No. 284-3); see also Def. Mot. (Dkt. No. 284) at 12; Govt. Br. (Dkt. No. 286) at 2 n.1) 18 U.S.C. § 3582(c)(1)(A) provides that a court may reduce a defendant's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Here, as discussed above, Mazyck applied to the warden of his facility – FCI Loretto – for compassionate release on May 22, 2020. On May 29, 2020, the warden denied his request. (See (Def. Mot., Ex. C (Dkt. No. 284-3); Def. Mot. (Dkt. No. 284) at 12; Govt. Br. (Dkt. No. 286) at 2 n.1) Accordingly, Mazyck has exhausted his administrative remedies through the Bureau of Prisons.

### B. Section 3553(a) Factors

18 U.S.C. § 3553(a) directs a sentencing court to consider

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

>>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>(3) the kinds of sentences available;
>
>(4) the kinds of sentence and the sentencing range established for –
>
>>(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
>
>(5) any pertinent policy statement—
>
>>(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . .
>
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Mazyck was remanded on February 9, 2016, after this Court accepted his guilty plea. (PSR at 2; Dkt. Nos. 96, 101) As discussed above, Mazyck has thus served approximately 55 months of his 120 month sentence. Assuming that he were to receive full good-time credit, he would serve 85% of his 120 month sentence (see 18 U.S.C. § 3624(b)(1) ("a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisosoner's sentence imposed by the court"), which correlates with a release date in September 2024.

The Court carefully considered the Section 3553(a) factors at sentencing. As to the nature of Mazyck's offense, his conviction arose from his longtime participation in a drug

trafficking organization that distributed huge amounts of crack cocaine and heroin in the Fordham area of the Bronx.  Between 2006 and 2013 Mazyck sold drugs for the organization on the street.  Between 2013 and his arrest on April 21, 2015, Mazyck acted as a manager for the organization, delivering crack cocaine and heroin to the street sellers and collecting proceeds from the drug sales.  (PSR (Dkt. No. 124) at 2, ¶ 10)  As noted above, at the time of Mazyck's arrest, agents recovered from his apartment 2,000 glassines of heroin and 160 bags of crack cocaine, along with narcotics paraphernalia, including baggies, glassines, a digital scale, ink pads, and stamps.  (July 18, 2016 Sentencing Tr. (Dkt. No. 197) at 6; PSR (Dkt. No. 124) ¶ 23)  At sentencing, Mazyck was held responsible for one kilogram of heroin and 500 grams of crack cocaine.  (July 18, 2016 Sentencing Tr. (Dkt. No. 197) at 2-3; see also PSR (Dkt. No. 124) ¶¶ 24, 29; Jan. 4, 2016 Plea Agreement at 2)

As to Mazyck's personal history and characteristics, at the time of his arrest he was living with his girlfriend – with whom he had been in a relationship for five years – and their child.  (PSR (Dkt. No. 124) ¶ 59)  Mazyck earned his GED while in state custody (id. ¶ 70), and has worked as a carpet cleaner, a gas station attendant, a janitor, a laborer, and a maintenance worker.  (July 18, 2016 Sentencing Tr. (Dkt. No. 197) at 6)

Mazyck has a significant criminal record, including two 2006 convictions for criminal sale of a controlled substance, and a 2009 conviction for money laundering.  He was on parole from the money laundering conviction when he committed part of the instant offense.  Prior periods of incarceration have been not sufficient to deter Mazyck from returning to drug trafficking.  (PSR (Dkt. No. 124) ¶¶ 40-46)

C.      **"Extraordinary and Compelling Reasons"**

In order to prevail on his compassionate release motion, Mazyck must demonstrate that "extraordinary and compelling reasons warrant . . . a reduction" in his sentence, and that any reduction that is granted comports with "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with providing guidance to courts regarding the application of the compassionate release statute. See 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. . . ."); United States v. Ebbers, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); see also Hernandez, No. 18 Cr. 834 (PAE), Dkt. No. 451.

The Commission's policy statement and commentary concerning Section 3582(c)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).

Finally, a defendant seeking compassionate release must demonstrate that his release will not present a danger to the community. U.S.S.G. § 1B1.13(2)-(3).

Here, Mazyck – who is now 38 years old – argues that he is entitled to compassionate release because his

7

>   obesity and asthma place him at a higher risk of hospitalization, and even death, from COVID-19.  This combination of conditions is uniquely dangerous when paired with the spread of COVID-19 at FCI Loretto, and warrants Mazyck's immediate release to supervision.  Unfortunately, with a BMI of 34.1, Mazyck is obese – and on his way to becoming severely so.  Exh. A at 3-4.  As the CDC has recognized, having obesity (defined as a body mass index of just 30 or above), increases a person's risk of severe illness from COVID-19. . . .  The CDC's warning is supported by a growing body of reports and peer-reviewed studies suggesting that obesity is one of the most accurate and reliable predictors of severe coronavirus illness. . . .
>
>   Along with obesity, Mazyck also suffers from asthma and sleep apnea – respiratory conditions that make him even more vulnerable to COVID-19.  "The Centers for Disease Control warns that persons with asthma are at high risk of serious illness if they contract the disease."  United States v. Hernandez, 2020 WL 1684062, at *3 (citing People with Moderate to Severe Asthma, Ctrs. for Disease Control and Prevention (Mar. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/asthma.html).  Indeed, according to a new study[,] . . . a person suffering from non-allergic asthma (like Mazyck) [is] "at higher risk of developing severe illness compared with adults who did not have asthma." . . .
>
>   In normal times, Mazyck's health conditions are unlikely to be life-threatening; but in the face of COVID-19, they present an imminent risk to his life.

(Def. Mot. (Dkt. No. 284) at 15-18)

Mazyck also points out that FCI Loretto, where he is incarcerated, "has officially registered at least 60 prisoner cases (current and 'recovered') of the novel coronavirus and appears to be in the throes of an ongoing outbreak."  (Id. at 2)  Defense counsel reports that as of September 7, 2020, although no inmates at FCI Loretto are reported as having active cases of the COVID-19 virus, seven staff members at FCI Loretto currently have COVID-19.  (Def. Reply (Dkt. No. 287) at 5)

As to Mazyck's alleged asthma condition, the Government notes that he did not report a history of asthma at the time of the 2016 Presentence Investigation Report.  Indeed, it appears that Mazyck did not report any asthma condition until June 9, 2020.  (See, e.g., Govt. Br., Ex. 1 at 35, 136, 234, 236)  BOP medical records from 2016 show that he denied any history

of respiratory issues at that time. A medical examination showed that Mazyck's respiratory system was normal; his lungs were clear, and his respiration was within normal limits. (See, e.g., id. at 3, 9, 11, 96)

On June 9, 2020, however, Mazyck told medical personnel at FCI Loretto that he has a history of childhood asthma and that he was hospitalized due to asthma as a child. He reported that, "since being locked down, having to wear masks, and the weather getting warmer that he notes occasional wheezing with exercise and would like to be issued albuterol." (Id. at 234, 358) Mazyck's lungs were clear upon auscultation, however, and his breathing rate was 18 per minute, with an oxygen saturation rate of 98%. (Id. at 234-35, 358-59) Mazyck was prescribed an albuterol inhaler to use "as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call)[.]" (Id. at 425; see also id. at 235) At that appointment, Mazyck also reported what was assessed as "[u]nspecified disturbances of smell and taste." (Id. at 359) Mazyck was sent for a general chest x-ray to establish a baseline for his asthma. (Id. at 236)

On July 9, 2020, Mazyck told medical personnel "that he is using his Albuterol MDI 3-4 times a week during the day and 3 times a night for wheezing. He states at times 2 puffs of [h]is inhaler does not seem to give him complete relief. He believes the combination of heat and humidity/masking/[]and lack of ability to get outside has exacerbated this issue. No fevers/cough. Pt does not feel ill." (Id. at 232, 356) At that appointment, Mazyck did not have crackles, rhonchi, or wheezing, and his lungs were clear. Medical personnel nonetheless assessed Mazcyk as suffering from asthma. (Id. at 232, 356) Mazyck was prescribed mometasone furoate, to take each evening for 180 days. (Id. at 233, 357) Mometasone furoate

9

can be used to prevent, rather than treat, asthma attacks. Mazyck was also prescribed an albuterol inhaler refill on July 31, 2020. (Id. at 351, 425)

While the Government contends that the evidence concerning Mazyck's asthma condition is equivocal, the Government concedes that Mazyck's BMI places him in the "increased risk" category should he contract the COVID-19 virus. (Govt. Br. (Dkt. No. 286) at 2-3) Obesity is a condition that makes someone more vulnerable to the COVID-19 virus, and leads to a poorer prognosis after infection. Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Sept. 12, 2020).

Although the Government agrees that Mazyck's BMI places him in the "increased risk" category should he contract the virus, the Government contends that his motion for compassionate release should be denied, because the Section 3553(a) factors weigh against release:

> Mazyck committed a serious and dangerous offense as not only a member, but a manager, of a drug trafficking organization ["DTO"]. For nearly ten years, Mazyck worked day in and day out to make sure that the DTO successfully distributed large quantities of deadly narcotics to the Fordham community. He was not deterred by a nine-month prison sentence stemming from two 2005 arrests for drug sales as part of the same DTO, an 18-month sentence for money laundering, or being on state parole. Rather than walking away from criminal activity after these sentences and while on parole, Mazyck doubled-down and rose through the ranks of the DTO.
>
> Mazyck has served approximately four and a half years of a ten-year sentence. Releasing him now would not "promote respect for the law" or "afford adequate deterrence to criminal conduct," § 3553(a)(2)(A)-(B), given the gravity of Mazyck's crimes and his criminal history. Moreover, given the history of recidivism, there is strong reason to believe that Mazyck's release would not be in

> the interest of "protect[ing] the public from further crimes of the defendant." §3553(a)(2)(C).
>
> Mazyck's contrary arguments lack merit. . . . Mazyck simply ignores his criminal history and his violation of parole, and he attempts to gloss over his disciplinary infractions while in BOP custody. Indeed, while in federal custody for the instant offense, Mazyck has been disciplined on two occasions: (i) in July 2019, for possessing a non-hazardous tool and smoking in an unauthorized area; and (ii) in August 2019, for possessing a hazardous tool.
>
> Second, Mazyck argues that, given his health conditions, Section 3552(a)(2)(D) "entails reducing [his] risk of exposure" by releasing him from BOP custody. (Mot. 20). Mazyck's argument rests on his claims that COVID-19 is "running rampant" at FCI Loretto and that the facility "appears to be in the throes of an ongoing outbreak" (*see* Mot. 1, 11). But his claims are simply not true. As of August 31, 2020, the BOP reports that zero inmates at FCI Loretto have an active COVID-19 case. Clearly, the measures taken at FCI Loretto, which have included testing Mazyck on three occasions, have been effective. Moreover, it is not clear that Mazyck would face less exposure to COVID-19 if he were to be released.

(Govt. Opp. (Dkt. No. 307) at 4-5)

        Acknowledging that Mazyck's medical conditions make him vulnerable to the COVID-19 virus, Mazyck has not demonstrated that there is uncontrolled infection at FCI Loretto. Indeed, given that there are no active cases at this facility in the inmate population, he does not appear to be at inordinate risk of contracting the virus.

        Even if Mazyck had demonstrated that he is at risk, he has not met his burden of demonstrating that his release would not present a danger to the community. For nearly ten years, Mazyck distributed large quantities of crack cocaine and heroin in the Fordham section of the Bronx. Arrests, convictions, periods of incarceration, and parole were not sufficient to deter him from returning to drug trafficking. Given Mazyck's record, this Court cannot find that the four and half years Mazyck has served are sufficient to deter him from returning to drug trafficking.

11

## **CONCLUSION**

For the reasons stated above, Mazyck's motion for compassionate release is denied.

Dated: New York, New York
       September 12, 2020      SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge